314 So.2d 567 (1975)
STUYVESANT INSURANCE COMPANY, a Foreign Corporation Doing Business in Florida, Petitioner,
v.
Alphonso BUTLER, a Minor, by His Father and Next Friend, Edward A. Butler, et al., Respondents.
No. 46143.
Supreme Court of Florida.
May 21, 1975.
Rehearing Denied July 18, 1975.
*568 Joseph P. Milton of Toole, Taylor, Moseley, Gabel & Milton, Jacksonville, for petitioner.
Ralph E. Sistrunk and William T. Kaler of Sistrunk & Kaler, Jacksonville, for Alphonso Butler and Edward A. Butler.
John B. Culp, Jr. of the Law Offices of John B. Culp, Jr., Jacksonville, for Blue Star, Inc., respondents.
ROBERTS, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, First District, in Butler et al. v. Stuyvesant Insurance Co., reported at 297 So.2d 595 (Fla. App.1, 1974), which purportedly conflicts with State Liquor Stores # 1 v. United States Fire Insurance Co., 243 So.2d 228 (Fla.App.1, 1971); Home Indemnity Co. v. Alday, 213 So.2d 13 (Fla.App.1, 1968); Continental Casualty Co. v. Borthwick, 177 So.2d 687 (Fla.App.1, 1965); Rakoff v. World Insurance Co., 191 So.2d 476 (Fla. App.3, 1966); Oren v. General Accident Fire and Life Assurance Corp., 175 So.2d 581 (Fla.App.3, 1965); Winter Garden Ornamental Nursery, Inc. v. Cappleman, 201 So.2d 479 (Fla.App.4, 1967); and Graves v. Iowa Mutual Insurance Co., 132 So.2d 393 (Fla. 1961).
The opinion of the District Court succinctly sets out the facts of the cause as follows:
"Appellants [petitioners-herein] seek reversal of a summary judgment entered in favor of appellee [respondent-herein] in an action for injuries sustained by Alphonso Butler on a shrimping vessel insured by appellee.
"The injured plaintiff was 17 years old when working as a crewman aboard the vessel Blue Star. He and his father sued Corey Jervis as owner of the vessel. Appellee then and for almost a year undertook the defense of the action and in answering admitted the allegation that the vessel was owned by Jervis. It was later determined through discovery that the true owner was Blue Star, Inc., whereupon appellee's counsel were permitted to amend their answer and answers to interrogatories to deny that Jervis was the owner of the vessel and to allege therein that it was owned by Blue Star, Inc. Then the Butlers amended their complaint by adding Blue Star, Inc. and the appellee as defendants.
"Although the complaint was filed by appellants on October 10, 1969, it was not until three years later that appellee asserted for the first time as a defense and as basis *569 for its motion for summary judgment and exclusionary clause, on which the court later based its summary judgment being reviewed herein, that reads as follows:
"`It is hereby understood and agreed that this policy excludes any and all liability in respect to minors employed or otherwise on board this vessel and/or vessels.'"
Petitioner filed its answer on November 15, 1972, denying, inter alia, that it had in full force and effect a policy of liability insurance which inured to the benefit of the plaintiff, as said was specifically excluded from those class of persons protected by said policy of insurance, as the plaintiff was a minor and minor crew members are expressly and unequivocably excluded from coverage. In March, 1973, petitioner insurance company moved for summary judgment on pleadings, depositions and affidavits. The trial court granted this motion for the reason that defendant's contract of insurance did not cover "minors."
The District Court of Appeal in its decision set out the following facts giving rise to the litigation:
"Appellant, Alphonso Butler, was part of an experienced three-man crew aboard the Blue Star at the time of the accident. He had already served on the crew of another shrimping vessel for a year and had advanced to second mate of the Blue Star at the time of the accident. The captain of the Blue Star knew that Alphonso was 17 years old when he hired him and knew him to be an able and experienced shrimper. Before hiring him, the captain stated that he had learned from Alphonso's previous captain that he was one of the best men that the latter had ever had aboard his vessel. The Blue Star captain also stated that a person with Alphonso Butler's experience could be the captain of a shrimp boat.
"The insurance policy issued by the appellee providing coverage for accidents occurring aboard the Blue Star vessel confines coverage to inland and coastal waters of North Carolina, South Carolina, Georgia, and Florida, but not exceeding 150 miles off the mainland, and also to include all waters of the Gulf of Mexico."
On appeal of this summary judgment, the First District Court reversed, holding that the plaintiff was not a "minor" within the exclusionary clause of the insurance policy at the time of the accident, and, therefore, was not excluded from coverage under the policy. The District Court reasoned, as follows:
"Appellant contends that although he was only 17 years old when the accident occurred, he was not a `minor' within the exclusionary clause in the insurance policy. Appellant points to the absence of a definition in the policy for the word `minor' and argues convincingly that the definition to be accorded should be determined in the context within which the word is used. That context is an insurance policy to provide coverage for injuries sustained by crewmen on board a shrimping vessel engaged in the fisheries industry on the high seas within 150 miles of the coast of North and South Carolina, Georgia and Florida, as well as all waters of the Gulf of Mexico.
"Appellant is correct in our judgment. In absence of a policy definition to the contrary, we believe the meaning to be given should be consistent with generally understood and accepted meaning of the word in the parlance of the maritime industry.
"When taken in the context of maritime law, a `minor' is not necessarily the same as a `minor' for other purposes. Federal statutes define an `able seaman' as a person 19 years of age or more who has had at least three years of service. Thus, federal law contemplates that a 16 year old is eligible for employment as a seaman.
"The International Labor Organization in a proclamation in regard to age of *570 seamen stated that children under the age of 15 years shall not be employed on vessels. The United States Navy permits a 17 year old to go to sea as a crewman. Thus, it appears to us that for the purpose of construing this insurance policy covering a fishing vessel, one need only look to the accepted nomenclature in the maritime industry in order to determine that a 17 year old, although a minor for some purposes, was contemplated as being within the class of persons covered by the policy."
Judge Boyer specially concurred with the majority, completely agreeing with its rationale, and stating further that careful examination of the policy provision in question reveals that it is ambiguous on its face. He further noted that:
"... the policy provision does not purport to exclude `coverage' or coverage for `injuries'. It merely purports to exclude `liability'. How one excludes liability is beyond my imagination. Further, the subject provision purports to exclude liability `in respect to minors'. Rhetorically one might ask: Does the subject provision purport to exclude coverage for injuries to minors? Does it purport to exclude coverage for injuries resulting from the acts of minors?"
The cases cited by petitioner for conflict state the general principle relative to construction of insurance policies that if the language of the policy is plain and unambiguous, the words must be given their commonly accepted meaning; and when the meaning of the policy provision is clear and free from doubt, it will be enforced as written and resort will not be made to extrinsic evidence for the purpose of arriving at a proper construction of the language used. These decisions do not conflict with the instant decision of the District Court since the policy provision in question was found to be ambiguous.
We agree that the policy provision in question is ambiguous in view of the circumstances of this cause, and we conclude that the District Court correctly decided that in the absence of definition in the policy of the term minor and in view of the nature of the policy  to provide coverage for injuries sustained by crewmen on board a shrimping vessel engaged in the fisheries industry on the high seas within 150 miles of the coast of North and South Carolina, Georgia and Florida  the term should be given meaning consistent with the parlance of the maritime industry. It would have been a simple matter for the insurance company to have merely stated that it would not insure one under a certain age but instead it chose to use the indefinite term of minority. As respondent herein asserts, the area covered in the policy includes the above enumerated states and confines it to the inland and coastal waters of these states but further provides that this means not to exceed 150 miles off the mainland. Respondent contends that to hold otherwise than that the youngest age at which a person is understood and accepted to have the status of majority in any of the jurisdictions covered by the policy, would produce the absurd result that a seaman aboard the vessel against whose injuries the assured had paid to be protected could sail from coverage to noncoverage just by crossing from international to territorial waters. It is common knowledge that fishing vessels often hire young crew members.
This Court has consistently adhered to the principle that contracts of insurance should be construed so as to give effect to the intent of the parties and if uncertainty is present in a policy, it should be construed against the insurer and in favor of the insured. Harris v. Carolina Life Insurance Co., 233 So.2d 833 (Fla. 1970); Winters v. Phillips, 234 So.2d 716 (Fla. App. 1970); Continental Casualty Co. v. Gold, 194 So.2d 272 (Fla. 1967); Hartnett v. Southern Insurance Co., 181 So.2d 524 (Fla. 1965); Griffin v. Speidel, 179 So.2d 569 (Fla. 1965); Aetna Casualty and Surety Co. v. Cartmel, 87 Fla. 495, 100 So. 802 *571 (1924). See also: Pennsylvania Nat. Mut. Casualty Insurance Co. v. Ritz, 284 So.2d 474 (Fla.App. 1973); Skinner v. Continental Casualty Co., 268 So.2d 576 (Fla.App. 1972); Eagle Star Insurance v. Ross, 247 So.2d 514 (Fla.App. 1971); Quick v. National Indemnity Co., 231 So.2d 22 (Fla. App. 1970); Peerless Insurance Co. v. Sun Line Helicopters, Inc., 180 So.2d 364 (Fla. App. 1965).
In view of the nature of the policy and the ambiguous use of the term "minor" in the policy, we agree with the District Court that we should look to maritime law to determine whether respondent Butler was covered by the insurance policy. Specifically, 46 U.S.C. § 672, relating to the requirements, qualifications, and regulations as to crews provides, in pertinent part:
"... Every person shall be rated an able seaman, and qualified for service as such on the seas, who is nineteen years of age or upward, and has had at least three years' service on deck at sea or on the Great Lakes, on a vessel or vessels to which this section applies, including decked fishing vessels, and vessels in United States Government service; ..."
Cf. 54 Stat. P. 2, 1705, United States Statutes at large, 1939-1941, Minimum Age (Sea) Proclamation by President of the United States, Convention between the United States and other members of the International Labor Organization. Since petitioner insurance company failed to define minority, in view of the nature and circumference of the policy, and because the policy must be construed in favor of the insured where the terms are ambiguous, we agree with the District Court that respondent Butler is covered by the policy and the trial court erred in granting summary judgment for petitioner.
The petition for writ of certiorari reflected apparent jurisdiction in this Court. We issued the writ and have heard argument of the parties. Upon further consideration of the matter, we have determined that the cited decisions present no direct conflict with the instant decision of the District Court of Appeal, First District, as required by Article V, Section 3(b)(3), Florida Constitution, to establish jurisdiction here. Accordingly, the writ must be and is hereby discharged.
It is so ordered.
ADKINS, C.J., and ALDERMAN and MORPHONIOS, Circuit Judges, concur.
ENGLAND, J., dissents with opinion.
ENGLAND, Justice (dissenting).
I dissent. A majority of the Court holds that we have no jurisdiction to review the decision below, then proceeds to review that decision and find it to be correct. I disagree with both determinations.
As regards jurisdiction, the district court's decision that the word "minor" in an insurance policy is so ambiguous as to require judicial interpretation conflicts with decisions from the First,[1] Third,[2] and Fourth[3] District Courts of Appeal holding that plain and unambiguous words in an insurance policy require no interpretation. *572 This conflict is sufficiently direct to warrant our exercise of jurisdiction.[4]
The threshold question on the merits of this case is whether there is ambiguity in the word "minor", as contained in the exclusionary clause of an insurance policy covering various maritime risks.[5] If there is no ambiguity, or stated conversely if the language is so well understood in common parlance as to require no external evidence for explanation, then judicial inquiry is at an end.[6]
Admittedly the dichotomy between what is "ambiguous" and what is "plain" is usually difficult and always subjective.[7] This case does not present the usual difficulty, however, since the term "minor" is widely used in a variety of contexts without any confusion as to its meaning. The term "minor" means an individual under the age of majority.[8] The term is found in the laws of every state, posted in movie theaters and bars nationwide, and placed rather prominently in the caption of the Complaint filed by the respondents in this case. It would be hard to find a word so well understood or so broadly accorded a universal definition.[9]
The exclusion provision of the contract, it seems to me, is unambiguous and must apply to preclude petitioner's liability.[10] *573 Any other result creates judicial mischief.[11] Courts may not distort the definition of a word used in the normal course of the English language in order to impose liability under an insurance contract.[12]
NOTES
[1] State Liquor Stores #1 v. United States Fire Ins. Co., 243 So.2d 228, 233 (1st Dist. Ct.App.Fla. 1971) (holding "conveyed by a messenger" to be unambiguous); Home Indem. Co. v. Alday, 213 So.2d 13 (1st Dist.Ct. App.Fla. 1968) (holding "named insureds" and "non-owned automobile" to be unambiguous).
[2] Oren v. General Accident Fire and Life Assur. Corp., 175 So.2d 581 (3d Dist.Ct.App. Fla. 1965) (holding "written consent" to be unambiguous).
[3] Winter Garden Ornamental Nursery, Inc. v. Cappleman, 201 So.2d 479 (4th Dist.Ct. App.Fla. 1967) (holding "any person" to be unambiguous).
[4] Fla. Const. art. V, § 3(b)(3). If we do not have jurisdiction, it is constitutionally improper to express any view on the merits of the case. The Constitution does not grant us general authority to render advisory opinions.
[5] The policy insured Blue Star, Inc. against loss or damage to the vessel, liability for accidental injury or death, and loss or damage to goods.
[6] E.g., Rigel v. National Casualty Co., 76 So.2d 285, 286 (Fla. 1954); New Amsterdam Casualty Co. v. Addison, 169 So.2d 877, 880 (2d Dist.Ct.App.Fla. 1964); State Liquor Stores #1 v. United States Fire Ins. Co., supra note 1. After a finding of no ambiguity, no explanatory materials are evaluated and no consideration is given to the maxims or rules of construction (such as construing insurance policies and other adhesion contracts against the author) which have been judicially-created to inject practical experience into the resolution of some legal controversies.
[7] The only discernible pattern which can be found in the numerous Florida cases which have confronted the "ambiguous-plain" dilemma is the predominance of cases in which the courts have either held a term "plain" and ruled for the insurer, or held a term "ambiguous" and ruled for the insured.
[8] It is irrelevant to our analysis that there are different legal ages of majority in the various states, or in the states conceivably affecting the vessel "Blue Star". The record reveals that the owners and operators of "Blue Star" were under no misapprehension as to respondent's age or his minority status when he was hired. We need not concern ourselves with or resolve the wholly separate conflicts of law question which might arise under a different set of facts.
[9] The obvious understanding of that term provides a sufficient explanation for the absence of any definition in the insurance policy. Beyond that, however, we know judicially that insurers exclude or limit minor coverage in many types of policies. We are not called upon to analyze the purpose or test the propriety of so doing in maritime policies. Were we, it would not stretch imagination to note the obvious relationship between the risk of ship-related injuries and the lesser degrees of maturity, dexterity and judgment possessed by minors as a class.
[10] My conclusion on the threshold question of ambiguity would render unnecessary a resort to extrinsic evidence such as that used by the majority. I believe the majority and the court below inadvertently employed bootstrap logic to support their findings of ambiguity. The majority has held that the policy provision is ambiguous "in view of the circumstances of this cause." Whatever gloss is provided by the "circumstances", as a legal matter it should only be supplied after a determination of ambiguity. The court below also inverted the order of analysis by seeking a well-accepted meaning for the term minor "in the parlance of the maritime industry." Having begun with extraneous concern for maritime factors, it was inevitable that ambiguity would be found in order to use extraneous maritime evidence.
[11] Courts may not, under the guise of contract interpretation, make a new contract for the parties. E.g., Haenal v. United States Fidelity and Guaranty Co., 88 So.2d 888, 890 (Fla. 1956); General Accident Fire and Life Assur. Corp. v. Liberty Mutual Ins. Co., 260 So.2d 249, 253 (4th Dist.Ct.App.Fla. 1972). The majority here has not only rewritten this maritime policy to exclude some, but not all, "minors" (apparently excluding from the exclusion those minors who are able seamen or eligible to join the United States Navy), but it has made the policy more ambiguous and subjective than it was before judicial review. The Court has not resolved, for example, whether the minimum age in the exclusionary clause for the next minor to be injured on the vessel "Blue Star" is 17 (as it is for sea duty in the Navy), 16 (as it is for able bodied seamen), or 15 (as it is for employment as a member of the International Labor Organization).
[12] Navarra v. Central Nat'l Ins. Co., 232 So.2d 28 (1st Dist.Ct.App.Fla. 1970), cert. denied, 237 So.2d 753 (Fla. 1970).