Melodie L. MILLER, Plaintiff,

v.

UNIVERSAL BEARINGS, INC. EM-
PLOYEE BENEFICIARY ASSOCIA-
TION PLAN, Defendant.

No. 3:93–cv–596RP.

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 1, 1995.

James P. Hayes, Holmes & Hayes, Plymouth, IN, for plaintiff.

Timothy J. Abeska and Jeanine M. Gozdecki, Roemer & Mintz, South Bend, IN, for defendant.

## MEMORANDUM AND ORDER

PIERCE, United States Magistrate Judge.

Plaintiff, Melodie Miller ("Miller") brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, against Universal Bearings, Inc. Employee Beneficiary Association Plan ("the Plan"), an employee welfare benefit plan, seeking recovery of benefits and attorney's fees. The Plan was established by her father's employer, Universal Bearings ("Universal"), and administered by Administrative Services of Indiana ("ASI").

The parties agree that the Plan is governed by ERISA. Miller claims that she was wrongfully denied benefits when ASI refused to pay medical bills incurred while she was hospitalized as a result of complications from chicken pox. The Plan claims that benefits were properly denied because Miller was not a "full-time student" at the time of her hospitalization and therefore did not qualify as a dependent under the Plan. This cause is now before the court on cross-motions for summary judgment. For the reasons discussed below, the Plan's motion will be granted and Miller's motion will be denied.

*Summary Judgment Standard*

 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for the motion, and identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, once a properly supported motion for summary judgment is made, the party that bears the burden of proof on a particular issue at trial cannot resist the motion by merely resting on its pleadings. *U.S. v. Lair,* 854 F.2d 233, 235 (7th Cir.1988). Rather, the party opposing the motion must "affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988); *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.1987), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). "A genuine issue for trial only exists when there is sufficient evidence favoring the nonmovant for a jury to return a verdict for that party." *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2553.

 "Supporting materials designed to establish issues of fact in a summary judgment proceeding 'must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits. When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence.'" *Friedel v. Madison,* 832 F.2d 965, 970 (7th Cir.1987), *quoting Martz v. Union Labor Life Ins. Co.,* 757 F.2d 135, 139 (7th Cir.1985). Affidavits presented in opposition to a motion for summary judgment must be based upon personal knowledge; a statement merely indicating that a purported affidavit is based upon "information and belief" is insufficient. *Price v. Rochford,* 947 F.2d 829, 832–33 (7th Cir. 1991); *Visser v. Packer Engineering Assoc., Inc.,* 924 F.2d 655, 659 (7th Cir.1991); *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir.1989). Rule 56(e) requires that any such affidavits "set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." Inadmissible hearsay contained in affidavits or other discovery materials such as interrogatories or depositions may not be considered. *Horta v. Sullivan,* 4 F.3d 2, 8–9 (1st Cir.1993) (newspaper article which contained "hearsay within hearsay" could not be considered); *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1264 (7th Cir.1993) ("We do not consider hearsay statements that are otherwise inadmissible at trial, and this limitation applies to deposition testimony based on inadmissible hearsay."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 584–85 (6th Cir.1992) (affidavit which contained nothing more than rumors, conclusory allegations and subjective beliefs could not be considered); *Cormier v. Penzoil Exploration & Prod. Co.,* 969 F.2d 1559, 1561 (5th Cir.1992); *Pfeil v. Rogers,* 757 F.2d 850, 862 (7th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); *Liberty Leasing Co. v. Hillsum Sales Corp.,* 380 F.2d 1013, 1015 (5th Cir.1967) (deposition containing inadmissible hearsay properly disregarded); *Amcast Indus. Corp. v. Detrex Corp.,* 779 F.Supp. 1519, 1526 (N.D.Ind.1991), *partial summ. judgment granted, mot. denied,* 822 F.Supp. 545 (N.D.Ind.1992), *aff'd in part and rev'd in part, remanded,* 2 F.3d 746 (7th Cir.1993), *and cert. denied,* —— U.S. ——, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994). Conclusory statements or indications of opinion or belief offered without any factual support are also insufficient to create a genuine issue of fact. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992); *Covalt v. Carey Canada, Inc.,* 950 F.2d 481 (7th Cir. 1991); *Davis v. Chicago,* 841 F.2d 186, 189 (7th Cir.1988). "Rule 56 demands something more specific than the bald assertion of the

general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du Page,* 715 F.2d 1238, 1243 (7th Cir. 1983), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984).

 "Summary judgment is properly entered in favor of a party when the opposing party is unable to make a showing sufficient to prove an essential element of a case on which the opposing party bears the burden of proof." *Common v. Williams,* 859 F.2d 467 (7th Cir.1988). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Flip Side Prods. v. Jam Prods.,* 843 F.2d 1024, 1032 (7th Cir.1988), *cert. denied* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). The inquiry involved in ruling on a motion for summary judgment implicates the substantive evidentiary standard of proof, for example, preponderance of the evidence, that would apply at trial. *Anderson,* 477 U.S. at 251–53, 106 S.Ct. at 2512. All factual inferences must be drawn in favor of the non-moving party. *Valley Liquors,* 822 F.2d at 659.

### Facts

At the relevant time, the self-funded health Plan established by Universal was overseen by ASI, an independent professional claims administrator. ASI's job was to evaluate each claim presented to the Plan and determine whether it was covered by the Plan's provisions. The Plan defined the health insurance benefits available for eligible employees of Universal and their dependents. Provisions relevant to the present dispute are as follows:

### MAJOR MEDICAL BENEFITS

Lifetime maximum—$1,000,000.00 per covered person.

Deductible—Each individual is required to pay an annual cumulative deductible of $100 ($300 per family).

\* \* \* \* \* \*

### MAJOR MEDICAL EXPENSE BENEFITS FOR COVERED PERSONS AND COVERED DEPENDENTS

When The Company receives proof that you or your Covered Dependents, while covered for this Benefit incur any of the following items of Covered Expenses as a result of accidental bodily injury or sickness, it will pay the percentage set forth in the Schedule of Benefits of such expense which meets the definition of Major Medical Expense as defined below, subject to the maximum individual limit and to the limitations listed below:

\* \* \* \* \* \*

### DEPENDENT COVERAGE:

Covered from birth to last day of calendar year in which dependent reaches age nineteen (19), but extended to age twenty-two (22) if a full time student and wholly dependent upon the covered employee for support and maintenance.

\* \* \* \* \* \*

### COBRA—CONTINUATION COVERAGE

If you and your covered dependents are covered under the existing employer group health plan and termination of coverage occurs due to the qualifying events listed below; you will then have access to COBRA Continuation Coverage ...

\* \* \* \* \* \*

YOU MUST NOTIFY your employer within sixty days of the following qualifying events if you wish to apply for COBRA Continuation Coverage: divorce, legal separation, loss of dependent status of children. If such notification is not received within the sixty day time limitation, COBRA Continuation Coverage is no longer available for that qualifying event.

(Stipulation of the Parties, Exhibit C. at 1, H–1, 2, A–1) The Plan did not provide a definition of the term "full-time student."

During the fall 1992 semester, Miller was completing the requirements for a design degree at Indiana Vocational Technical College in South Bend Indiana ("Ivy Tech").

She attended and was enrolled for nine credit hours of classes a week. The fall 1992 semester officially ran from August 24, 1992, through December 19, 1992. From December 21, 1992, through January 19, 1993, when she was 20 years old, Miller was hospitalized for severe complications from chicken pox and contraction of viral pneumonia. During her hospital stay, she incurred over $90,000 in medical expenses. At the time of her illness and hospitalization, she was completely dependent on her father for support and maintenance. On January 22, 1993, ASI received a claim for benefits arising out of Miller's hospitalization. In an attempt to confirm Miller's dependent status, ASI sent her father a Dependent Certification form. ASI received the completed form on January 27, 1993. Miller's father indicated on the form that his daughter was not a full-time student. ASI then requested confirmation of Miller's student status from Ivy Tech. Ivy Tech's registrar informed ASI that Miller had not been a full-time student at any time after May 10, 1992; that during the summer of 1992 she was enrolled for only three credit hours; that during the fall semester she was enrolled for only nine credit hours; and that she was not enrolled at all for the current spring 1992 semester. Ivy Tech determined student status by the total number of semester hours the student was enrolled. The policy, which was contained in Ivy Tech's Student Handbook and College Catalog, stated in relevant part:

a. Full-time student: 12 or more credits per semester.

b. Three-quarter time student: 9–11 credits per semester.

c. One-half time student: 6–8 credits per semester.

d. Less than one-half time student: 1–5 credits per semester.

(Stipulation, para. 15; Exhibits A, B.)

ASI denied Miller's claims because it found she was not a full-time student at the time of her hospitalization. Miller claims that she was a full-time student when she was hospitalized because during the fall 1992 semester she took 9 hours of classes, put in an additional 27 hours of required lab time each week, and spent an additional 10 to 15 hours

a week preparing homework. She took 9, instead of 12, credit hours during the fall 1992 semester because her faculty advisor recommended that she take a required 3 hour class in the summer of 1992 to accommodate required lab time in the fall 1992 semester. At the time Miller was hospitalized on December 21, 1992, she had just completed her portfolio, a final project required for graduation, which would be corrected and returned to her for further work in the spring of 1993. Miller has fully complied with the provisions of the Plan's claims procedure and has exhausted all administrative appeals procedures through ASI. (Stip. paras. 13–14). The parties agree that if Miller had been eligible for coverage under the Plan, she is now entitled to benefits in the amount of $89,401.46. (Id.)

### Denial of Benefits

■ Title 29 U.S.C. § 1132(a)(1)(B) of ERISA authorizes a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan ..." Under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), a plan administrator's denial of benefits "is to be reviewed under a *de novo* standard unless the benefit gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan." The parties agree that the Universal benefit Plan gave no discretion to the Plan's administrator to determine eligibility. They also agree that its denial of benefits is to be reviewed under a *de novo* standard.

■ Miller claims that the Plan wrongfully denied her benefits based on an erroneous interpretation of the term "full-time student." The Plan provides benefits to one who is covered when they incur a major medical expense. (Plan at H–1.) Therefore, Miller can prevail only if she was a full-time student at the time of her hospital stay. In construing insurance contracts under ERISA, federal common law rules of contract interpretation apply. *McNeilly v. Bankers United Life Assurance Co.*, 999 F.2d 1199, 1200 (7th Cir.1993); *Phillips v. Lincoln Nat. Life Ins. Co.*, 978 F.2d 302, 307

(7th Cir.1992); *Hammond v. Fidelity and Guar. Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992). The federal common law contract rules dictate that courts "interpret the terms of the policy 'in an ordinary and popular sense as would a [person] of average intelligence and experience.'" *Hammond*, 965 F.2d at 430 (quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990)). *See also McNeilly*, 999 F.2d at 1201; *Phillips*, 978 F.2d at 308, 312–14. Ambiguous policy terms must be construed strictly in favor of the insured. *McNeilly*, 999 F.2d at 1201; *Phillips*, 978 F.2d at 308, 311–14; *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 638 (7th Cir.1991). Contract language is ambiguous if it is capable of more than one reasonable interpretation. *McNeilly*, 999 F.2d at 1201; *Auto–Owners (Mut.) Ins. Co. v. L.P. Cavett Co.*, 882 F.2d 1111, 1113 (7th Cir.1989). However, "[r]ules of interpretation are tiebreakers" only. *Harnischfeger Corp. v. Harbor Ins. Co.*, 927 F.2d 974, 976 (7th Cir.1991), *cert. denied*, 502 U.S. 864, 112 S.Ct. 189, 116 L.Ed.2d 150 (1991). Therefore, ambiguity will be resolved against an insurer only if there is a "genuine (meaning substantial) uncertainty, not resolvable by other means, and the insured's proposed reading [is] reasonable." *Harnischfeger*, 927 F.2d at 976. *See also Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1096 (7th Cir.1994); *McNeilly*, 999 F.2d at 1201 n. 6; *Phillips*, 978 F.2d at 313. Ambiguity will not be artificially created where none exists. *McNeilly*, 999 F.2d at 1201 n. 6; *Hammond*, 965 F.2d at 430; *Evans*, 916 F.2d at 1441. Thus, if "full-time student" might reasonably be understood to include Miller at the time she incurred the costs of her hospitalization, then its application to her status is ambiguous at the very least and must be interpreted in her favor. However, if no reasonable interpretation of "full-time student" includes Miller's status when she entered the hospital on December 21, 1992, ASI's denial of benefits must be upheld.

■ "Full time" is commonly defined as "devoting one's full attention and energies to something" and "the amount of time considered the normal or standard amount for working during a given period." *Merriam–Webster's Collegiate Dictionary* (10th ed. 1993). Therefore, the term full-time student "envision[s] a person's enrollment in an academic institution and attendance at classes on a substantial basis." *Margie Bridals, Inc. v. Mutual Ben. Life Ins. Co.*, 62 Ill.App.3d 542, 19 Ill.Dec. 547, 550, 379 N.E.2d 62, 65 (1978); *Blue Cross and Blue Shield, Inc. v. Cassady*, 496 So.2d 875, 877 (Fla.Dist.Ct.App. 1986). *See also Massey v. Board of Trustees*, 500 So.2d 864, 866 (La.App.1986), *cert. denied*, 501 So.2d 775 (La.1987) (A full-time student is one whose "primary daily occupation was that of student."). It is undisputed that when Miller was admitted to the hospital on December 21, 1992, the fall semester had officially ended, she had turned in her final project (her portfolio), and she was not registered for the upcoming spring semester. The term full-time student holds no ambiguity in this context. No reasonable interpretation of full-time student includes Miller on December 21, 1992. Consequently, this court finds that she was not entitled to coverage as a dependent under the terms of the Plan.

■ Miller argues that the Plan should be estopped from asserting that she was not a full-time student on December 21, 1992, because it paid claims submitted on June 23 and December 17, 1992. She claims that "[i]f the plan had investigated and rejected the [June] claim, [she] could have elected COBRA coverage in a timely manner." (Plaintiff's Memorandum in Support of Motion for Summary Judgment, at 8) The court cannot agree.

> A party asserting estoppel must show that: (1) the opposing party knowingly misrepresented or concealed a material fact; (2) the complaining party, not knowing the truth, reasonably relied on that misrepresentation or concealment; (3) the complaining party suffered [a] detriment; and (4) the complaining party had no knowledge or convenient means of ascertaining the true facts which would have prompted it to react otherwise.

*Krawczyk v. Harnischfeger*, 41 F.3d 276, 280 (7th Cir.1994); *see also Anetsberger v. Metropolitan Life Ins. Co.*, 14 F.3d 1226, 1223

**1044**

(7th Cir.1994); *Loyola Univ. v. Humana Ins. Co.,* 996 F.2d 895, 902 (7th Cir.1993). Miller has not established that the Plan misrepresented or concealed a material fact. Further, it was Miller's unreasonable belief that coverage would continue after the fall 1992 semester had ended that caused her to go without coverage. She knew or could have easily discovered that coverage would end when she stopped attending school full time. She also could easily have discovered when the semester ended. Accordingly, Miller has failed to establish the elements of estoppel.

*Conclusion*

For the foregoing reasons, the court finds that there is no genuine issue of material fact and that the defendant, Universal Bearings, Inc. Employee Beneficiary Association Plan, is entitled to judgment in its favor as a matter of law. Accordingly, the motion for summary judgment by plaintiff Melodie Miller is **DENIED,** and the motion for summary judgment by defendant Universal Bearings, Inc. Employee Beneficiary Association Plan is **GRANTED.** The Clerk is directed to enter final judgment in favor of the defendant and against the plaintiff.

**SO ORDERED.**